IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Paul Smith, #119472,<br><br>                    Petitioner,<br><br>      vs.<br><br>Robert Stevenson, Warden, BRCI,<br><br>                  Respondent. | Civil Action No. 6:09-456-MBS-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

        The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

        The record reveals that the petitioner is currently confined at the Broad River Correctional Institution in the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Lexington County. The petitioner was indicted by the Lexington County Grand Jury during the April 2002 term of the Lexington County Court of General Sessions for one count of murder (2002-GS-32-01212). He was represented by attorney Ken Mathews. The State was represented by Dayton Riddle and Shawn Graham, Assistant Solicitors for the Eleventh Judicial Circuit. On October 21-24, 2003, the petitioner was tried by jury and found guilty of voluntary manslaughter. Pursuant

to the notice filed before trial, the Honorable James R. Barber, Circuit Court Judge, sentenced the petitioner to life without parole.

### Direct Appeal

The petitioner timely filed a notice of appeal on October 30, 2002.  On appeal, he was represented by Robert M. Dudek, Assistant Appellate Defender for the South Carolina Office of Appellate Defense.  The petitioner's appeal was perfected with the filing of a final *Anders*[1] brief of appellant.  In the *Anders* brief, counsel argued the judge erred by instructing the jury on voluntary manslaughter over the petitioner's objection, that the petitioner's testimony showed he was acting in self-defense, and that there was no evidence the petitioner killed the decedent in a heat of passion upon a sufficient legal provocation.  The petitioner also filed a *pro se* brief.  In the *pro se* brief, the petitioner appears to have asserted that a statement was improperly not presented at trial, there was insufficient evidence to support his conviction, prosecutorial misconduct, the trial court failed to discuss the law on retreat in self-defense in the jury charge, and the trial court improperly denied his motion for a directed verdict.  The petitioner later filed an amended *pro se* brief in which he contended the trial court lacked statutory jurisdiction to sentence him due to the Solicitor's failure to meet the statutory mandate.

In an unpublished opinion filed June 22, 2004, the South Carolina Court of Appeals dismissed the petitioner's direct appeal.  The Court noted that the petitioner was tried and convicted of voluntary manslaughter and sentenced to life without parole per the two strikes law.  The Court of Appeals also noted that the petitioner appealed, arguing the judge erred by instructing the jury on voluntary manslaughter when the petitioner's testimony showed he was acting in self-defense and there was no evidence that he killed

---

[1]*Anders v. California*, 386 U.S. 738 (1967).

the decedent in the heat of passion upon a sufficient legal provocation. On appeal, counsel for the petitioner had filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there were no meritorious grounds for appeal and requesting permission to withdraw from further representation. The petitioner filed a *pro se* response.

After a thorough review of the record pursuant to *Anders* and *State v. Williams*, 305 S.C. 116, 406 S.E.2d 357 (1991), the Court of Appeals dismissed the appeal and granted counsel's petition to be relieved.

In a filing dated July 14, 2004, the petitioner petitioned the South Carolina Court of Appeals for a rehearing based upon his prior filings. By order dated August 18, 2004, the South Carolina Court of Appeals denied the petitioner's petition for rehearing. The Court of Appeals noted that after a careful consideration of the petition for rehearing, it was unable to discover that any material fact or principle of law had been either overlooked or disregarded and hence, there was no basis for granting a rehearing. It was, therefore, ordered that the petition for rehearing be denied. The remittitur was sent on September 24, 2004.

### PCR Action

The petitioner filed an application for post-conviction relief (PCR) on September 14, 2004 (2004-CP-32-3343), alleging ineffective assistance of counsel. Specifically, the petitioner alleged counsel was ineffective for not "contemporaneously objecting to the circuit court allowing the State to move for a lesser included offense; as the State was not eligible for the lesser included offense of murder; that being 'voluntary - manslaughter" (App. 438, 442-449). Second, the petitioner asserted trial counsel was ineffective "in not requesting the circuit court charge '<u>the immunity from the law of retreat</u>' - which ordinarily is an essential element of such defense" (App. 437, 450-58).

On June 10, 2005, the petitioner filed a motion to supplement and supplement to post-conviction relief application. In this motion, the petitioner added two grounds to his application. First, he asserted that he was denied his Sixth Amendment right to the effective assistance of trial counsel wherein counsel failed to object and preserve for appeal the issue that the trial court lacked jurisdiction to sentence the petitioner to life imprisonment without parole under S.C. Code Ann. § 17-25-45 where the petitioner never received written notice of the Solicitor's intent to seek a life sentence under the statute and said written notice to defense counsel and the defendant is mandatory. Second, the petitioner contended that counsel provided ineffective assistance when counsel failed to request that the trial judge tailor his instructions in giving the instructions on self-defense so as to also inform the jury that the defendant had no duty to retreat because he was on his own premises.

The respondent filed its return on April 29, 2005. On July 18, 2006, the petitioner filed an amended application for post-conviction relief. In this application, the petitioner asserted that trial counsel was ineffective in failing to assure that the Solicitor's office provide written proof to both trial counsel and defendant of the Solicitor's intent to seek life without parole, pursuant to S.C. Code Section 17-25-45. Trial counsel further failed to object in any way to the State's failure to provide proper notice. Second, the petitioner asserted trial counsel was ineffective in presenting the defense of self defense at trial, and in failing to argue and/or request that the court charge jury regarding the elements of self defense, including the petitioner's immunity from a duty to retreat in his own home. Third, the petitioner asserted that trial counsel was ineffective in not objecting to the trial court charging voluntary manslaughter.

On April 10, 2007, an evidentiary hearing in this matter was held before the Honorable William P. Keesley, Circuit Court Judge. The petitioner was present and was represented by attorney Rita Metts. Assistant Attorney General Daniel E. Grigg

4

represented the respondent. By order filed June 7, 2007, the petitioner's application for post-conviction relief was denied and dismissed with prejudice.

The PCR court had the opportunity to review the record in its entirety and had heard the testimony at the post-conviction relief hearing. The PCR court had further had the opportunity to observe witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. § 17-27-80 (1985).

The petitioner testified that initially he was arrested for murder and subsequently convicted of voluntary manslaughter. He testified that he was living at a boarding home in West Columbia at the time of the incident. The petitioner testified that he was attacked by the victim, who also lived at the home, and was simply defending himself. He stated that he never intended to take the victim's life (App. 517).

The petitioner testified that he went to trial in October 2002, at which time Mr. Matthews represented him. He stated that at the close of his trial the trial judge charged the jury on murder, voluntary manslaughter, involuntary manslaughter and self-defense. The petitioner testified that the jury was improperly charged on self-defense (App. 517-18). He argued that there should have been a charge given on the fact that he had no duty to retreat. The petitioner testified that Mr. Matthews should have requested that the judge explain the four elements of self-defense (App. 518).

The petitioner stated that he was sentenced to life without parole (LWOP). He testified that trial counsel did not properly explain to him the LWOP statute. He stated that he would have considered the six-year plea offer if he had fully understood LWOP. He stated that he never received an LWOP letter. The petitioner testified that he was taken to court on August 8, 2002, for a motion hearing regarding LWOP. He stated that he did not know what he was being taken to court for until after he arrived. The petitioner testified that trial counsel objected that the notice of LWOP was improper (App. 518).

5

The petitioner testified that Mr. Matthews failed to explain to the jury that the victim was drunk. The petitioner stated that Mr. Matthews had a copy of the toxicology report but failed to provide that to the jury. The petitioner testified that the involuntary and voluntary manslaughter charges were improperly given. He stated that Mr. Matthews should have objected (App. 518).

Mr. Matthews testified that he represented the petitioner during his murder trial. He testified that he hired a private investigator to assist with his investigation. Mr. Matthews stated that he received and reviewed discovery in the case. He testified that the solicitor made a plea offer and he discussed that offer with his client. Mr. Matthews further testified that he and the petitioner discussed the charges and the case the solicitor had against him. Mr. Matthews testified that they discussed the possibility of going to trial and the likelihood of success. He stated that he discussed LWOP with his client and was confident that the petitioner understood the LWOP statute (App. 518).

Mr. Matthews testified that the victim was very intoxicated and perhaps on drugs at the time of this incident. He stated that Dr. Sexton testified about the victim's state at trial. Mr. Matthews testified that he was not sure why the trial judge did not include the duty to retreat in the jury charge (App. 518). He testified that the law surrounding the duty to retreat has evolved since the petitioner's trial and that he feels the charge given at the petitioner's trial was correct under the law at that time. Mr. Matthews testified that he examined Dr. Sexton extensively on the victim's toxicology report. He stated that the report was introduced along with numerous other exhibits (App. 519).

The PCR court found that the petitioner's testimony was not credible. The PCR court did, however, find Mr. Matthews' testimony to be extremely credible. The PCR court found that the petitioner had not met his burden of proof in showing that Mr. Matthews' representation fell below the reasonable professional standards of defense attorneys in this state, and therefore, was not entitled to post-conviction relief.

The PCR court found that the petitioner failed to prove his assertion that Mr. Matthews did not properly advise him about the nature and elements of the charges against him, including the lesser included offenses. Mr. Matthews testified that he did, in fact, discuss with his client the charges against the petitioner. He further testified that he hired an investigator, conducted an investigation into the case, received and reviewed discovery, entered into plea negotiations on the petitioner's behalf and discussed all of this with his client. He testified that the petitioner not only knew the elements of the charges he was facing but that they also discussed voluntary manslaughter, involuntary manslaughter and self-defense.

The PCR court further found that the petitioner was properly advised of the LWOP statute. Mr. Matthews testified that they discussed LWOP and the possible outcomes if the petitioner went to trial versus pleading guilty. The trial court held a motions hearing on the issue of LWOP, at which the solicitor verbally and in writing informed the court, the petitioner and petitioner's counsel that the State was seeking life without parole. Mr. Matthews stated that he felt the petitioner understood LWOP. Mr. Matthews further testified that he objected that the LWOP notice given was unconstitutional, but to no avail. The PCR court found that the petitioner understood LWOP and was given proper notice. There was nothing more Mr. Matthews could have done with regard to this issue.

The PCR court further found that the trial court properly charged the jury given the applicable law at the time of the petitioner's trial. The jury was charged with voluntary manslaughter, involuntary manslaughter, murder and self-defense. The PCR court further found that the trial court properly handled the duty to retreat issue pursuant to the applicable law at the time of this trial and that Mr. Matthews was in no way ineffective for not objecting to the charges presented to the jury. No prejudice had been proven related to the jury charge and no showing of how the issue of retreat would likely have changed the outcome.

Finally, the PCR court found that Mr. Matthews' examination of Dr. Sexton regarding the victim's toxicology report was sufficient. He employed a valid trial strategy and represented the petitioner well with in the acceptable norms for defense attorneys in this state. The petitioner was not entitled to the relief requested.

Based on all the foregoing, the PCR court found and concluded that the petitioner had not established any constitutional violations or deprivations that would require the PCR court to grant his application. Therefore, that application for post-conviction relief must be denied and dismissed with prejudice.

The PCR court cautioned the petitioner that he must file and serve a notice of intent to appeal within 30 days from the receipt of the order to secure the appropriate appellate review. *See* Rule 203, SCACR. His attention was also directed to South Carolina Appellate Court Rule 227 for appropriate procedures after notice had been timely filed.

### *PCR Appeal*

The petitioner timely filed a notice of appeal to the PCR court's order. On appeal, the petitioner was represented by Eleanor Duffy Cleary, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. The petitioner's PCR appeal was perfected with the filing of a petition for writ of certiorari. In the petition, the petitioner asserted the post-conviction relief court erred in finding counsel was not ineffective where counsel failed to object to the trial judge's self-defense charge, which omitted the statement that a defendant had not duty to retreat in his own house, where the evidence showed that petitioner was attacked by the decedent in his own premises at a boarding house. The respondent filed its return to the petition for writ of certiorari on May 20, 2008.

In a letter order dated November 6, 2008, the South Carolina Supreme Court denied the petition for writ of certiorari. The remittitur was sent on November 24, 2008.

***Federal Habeas Action***

In his petition now before this court, the petitioner makes the following allegations:

**Ground One:** Whether the judge erred by instructing the jury, over petitioner's objection, on voluntary manslaughter where pet.'s testimony showed he was acting in self-defense, and there was no evidence petitioner killed the decedent in a heat of passion upon a sufficient legal provocation.

**Supporting Facts:** During Judge's jury charge the judge noted that the solicitor asked him to charge voluntary manslaughter as a lesser-included offense. The judge noted also that the defense objected to voluntary manslaughter being charged to the jury. The solicitor argued the testimony of witnesses supports the premise that the attack was "an unprovoked attack..." Defense counsel argued the solicitor's rendition did not support a voluntary manslaughter charge. Defense states the element of voluntary manslaughter were not present in this case. The judge charged voluntary manslaughter nonetheless. Defense counsel again objected after conviction and argued that voluntary manslaughter should not have been charged.

On May 6, 2009, the respondent filed a motion for summary judgment. By order filed May 7, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his opposition to the motion for summary judgment on July 2, 2009. On July 13, 2009, the respondent filed his reply to the petitioner's opposition, and on July 21, 2009, the petitioner filed his second response in opposition.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

## ANALYSIS

The PCR court found that the trial court properly charged the jury given the applicable law at the time of the petitioner's trial. The jury was charged with voluntary manslaughter, involuntary manslaughter, murder, and self-defense (App. 520-21).

The respondent first argues that the petitioner's claim here challenges only whether the voluntary manslaughter jury instruction was properly given, which is a claim of error of state law. Thus, the respondent argues that it cannot serve as the basis upon which federal habeas relief can be granted. *See, e.g. Engle v. Isaac*, 456 U.S. 107, 120-21 n. 21 (1982). An error of state law can only warrant federal habeas corpus relief where it rendered the proceedings so fundamentally unfair that it resulted in a denial of due process. *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991).

Assuming for purposes of this motion that ground one is appropriate for federal habeas review, it fails on the merits. "The evidence presented at trial determine the law to be charged." *State v. Jackson*, 681 S.E.2d 17, 20 (S.C. Ct. App. 2009). "Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon

10

sufficient legal provocation." *State v. Cole*, 525 S.E.2d 511, 513 (S.C. 2000). "'Sudden heat of passion upon sufficient legal provocation' that mitigates a felonious killing to manslaughter must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called 'an uncontrollable impulse to do violence.'" *State v. Lowry*, 434 S.E.2d 272, 274 (S.C. 1993)(quoting *State v. Gardner*, 64 S.E.2d 130 (S.C. 1951)). "In determining whether voluntary manslaughter should be charged as a lesser offense of murder, the trial court must view the evidence in the light most favorable to the defendant." *State v. Cottrell*, 657 S.E.2d 451, 452 (S.C. 2008). "The charge need not be given 'where it clearly appears that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter.'" *Id.* (quoting *State v. Pittman*, 647 S.E.2d 144, 166 (S.C. 2007).

In the petitioner's case, there was testimony that supported a jury instruction on voluntary manslaughter. Bruce Battle, one of the petitioner's friends, testified at trial. He stated that on the night of the manslaughter, he went over to talk with the petitioner. When the petitioner answered the door, he told Battle that he had "f----- his roommate up" (App. 111). Battle also stated that the petitioner told him he did it because the roommate had "knocked the dope out of his hand," and they had gotten into a fight (App. 111). James Andrews, another resident at the boarding house, testified that he overheard the fight between the victim and the petitioner. He testified that he recalled hearing the petitioner tell the victim not to come in his room anymore that evening (App. 142). He stated that there was a little silence, but then he heard a lot of slapping coming from the dining room area (App. 142). He only heard two voices at that time: the petitioner's and the victim's (App. 143). After the slapping, he heard the petitioner tell the victim, "[y]ou're not going to make me go to prison for this" (App. 143). Andrews heard the petitioner tell the victim to quit messing with him (App. 144). He also noted that he heard the petitioner say that the

victim was down there bleeding, and that he told him to leave him alone (App. 144-45). At some point, it got quiet again (App. 145). Andrews later heard a third person's voice talking with the petitioner (App. 145).

Johnny Roberson, another roommate at the boarding house, testified that he saw the petitioner enter the victim's room on the night of the manslaughter (App. 157). He stated that the petitioner was "real mad" (App. 157). According to Roberson, the petitioner took the victim's crack stem, used it to smoke some crack, then threw the stem back down on the table in the victim's room (App. 157-58). The petitioner left the room, but the victim followed him out (App. 158). The petitioner was sitting at the dining room table when the victim slapped him in the face two or three times (App. 158-59). At the time, according to Roberson, the petitioner had a stem in his mouth (App. 159). After being hit, the petitioner stood up and went back to his bedroom (App. 159). Roberson left after seeing that exchange (App. 160). The petitioner also testified. He asserted that the victim sucker-punched him right outside his room and knocked him down (App. 235).

Clearly, there was testimony to support a voluntary manslaughter charge. There was testimony indicating that the victim hit the petitioner several times, which constituted sufficient provocation. *See State v. Johnson*, 508 S.E.2d 29, 31 (S.C. 1998) (voluntary manslaughter instruction warranted where victim and defendant engaged in fight at time of killing); *see also State v. Penland*, 273 S.E.2d 765, 767 (S.C. 1981). There was also testimony that indicated the petitioner was angered by the victim's actions, which was sufficient evidence that he may have acted in a sudden heat of passion. *See State v. Dickey*, 669 S.E.2d 917, 926 (S.C. Ct. App. 2008). Furthermore, there is nothing in South Carolina law that would prevent the State from requesting a jury instruction on a lesser included offense if there was evidence to support a finding of guilt on that offense. *See id*. at 925-26 (voluntary manslaughter instruction given over defendant's objection). Based upon the foregoing, the petitioner's claim fails.

In his response to the motion for summary judgment, the petitioner argues that his trial counsel was ineffective for failing to object to the self-defense jury instruction given by the trial court.  The petitioner did not raise an ineffective assistance of counsel claim in his habeas petition.  As argued by the respondent in his reply brief, a petitioner cannot amend his petition through arguments raised in his response in opposition to a motion for summary judgment.  In his sur-reply, the petitioner states that his only claim is ground one and "[f]or the Respondent to somehow interpret that claim as 'ineffective assistance of counsel' is farfetched and specious" (pet. sur-reply at 2).  Accordingly, the petitioner's only claim before this court is that contained in ground one and addressed above.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 11) be granted.


s/William M. Catoe
United States Magistrate Judge

October 6, 2009

Greenville, South Carolina