IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Paul A. Smith #119472, | ) |
| | ) C/A No. 6:09-456-MBS |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| Robert Stevenson, Warden, BRCI, | ) **OPINION AND ORDER** |
| | ) |
| Respondent. | ) |
| | ) |

Petitioner Paul A. Smith ("Petitioner") is a state prisoner at the Broad River Correctional Institution in the South Carolina Department of Corrections. On February 25, 2009, Petitioner, proceeding *pro se,* filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Entry 1). This matter is before the court on Petitioner's motion to amend his § 2254 petition (Entry 32), Petitioner's supplemental pleading (Entry 32-1), and Respondent Robert Stevenson's ("Respondent") motion for summary judgment (Entry 11).

**I. BACKGROUND**

In April 2002, Petitioner was indicted for one count of murder by a Lexington County Grand Jury (2002-GS-32-01212).[1] In October 2002, Petitioner was tried by a jury and found guilty of the lesser-included offense of voluntary manslaughter. Entry 11-2, 104. At trial, Petitioner was represented by attorney Ken Matthews ("Mr. Matthews") and the State was represented by attorneys Shawn Graham and Dayton Riddle, Assistant Solicitors for the Eleventh Judicial Circuit. Entry 11-

---

[1]  Petitioner was charged with the stabbing death of Arnold Heyward ("victim"), a man with whom Petitioner and two other men shared a boarding house in West Columbia, South Carolina.

1

1, 5. Petitioner was sentenced to life without parole by the Honorable James R. Barber, III on October 24, 2002. Entry 11-2, 112. Petitioner's trial attorney timely filed a notice of appeal on October 30, 2002. Entry 11-3. On appeal, Petitioner's appellate attorney, Robert Dudek, filed an *Anders* brief[2] arguing that the trial judge erred by instructing the jury on voluntary manslaughter over Petitioner's objection. Entry 11-2, 121-34. Petitioner filed a *pro se* response to the *Anders* brief on February 6, 2004. Entry 11-4, 11-5. On June 22, 2004, the South Carolina Court of Appeals dismissed the appeal and granted Robert Dudek's request to withdraw from further representation of Petitioner. Entry 11-6. Petitioner submitted a letter dated July 15, 2004 to the South Carolina Court of Appeals requesting a rehearing based on his prior filings. Entry 11-2, 138. The South Carolina Court of Appeals denied Petitioner's request on August 18, 2004. Id. at 139. A remittitur was issued on September 24, 2004. Entry 11-7.

On September 14, 2004, Petitioner filed an application for post-conviction relief ("PCR") in the South Carolina Court of Common Pleas for the Eleventh Judicial Circuit. Entry 11-8. In the application, Petitioner alleges his trial counsel Mr. Matthews was ineffective in (1) not presenting a defense of self-defense; (2) failing to request the law of immunity from a duty to retreat; and (3) not objecting to the charge of voluntary manslaughter when the charge was not requested by the defense. Id. at 2-3. At the PCR hearing, Petitioner was present and represented by attorney Rita Metts. Entry 11-2, 181. Petitioner and Mr. Matthews testified before the PCR court. Id;11-9.

---

[2]  An *Anders* brief is a request by a court-appointed attorney to withdraw from representing a criminal defendant on appeal because of the attorney's belief that there are no meritorious grounds for relief. See Anders v. California, 386 U.S. 738 (1967). *"Anders* requires appellate counsel to brief arguable issues, despite counsel's belief the appeal is frivolous, as a safeguard of the right to appeal." Austin v. State, 305 S.E.2d 395, 396 (S.C. 1991).

2

Petitioner testified that at the time of the incident he was living at a boarding home in West Columbia. Entry 11-2, 185 ll.4-7. Petitioner further testified that the victim, who also lived at the boarding home, attacked Petitioner and that Petitioner stabbed him in self-defense. Id. at ll. 8-10. When questioned about the trial, Petitioner testified that the trial judge charged the jury on murder, voluntary manslaughter, involuntary manslaughter and self-defense. Id. at ll.19-21. Petitioner testified that there should have been a charge explaining that Petitioner did not have a duty to retreat before acting in self-defense. Id. at 186 ll. 19-20. Petitioner also testified that his trial counsel failed to admit into evidence the victim's toxicology report and inform the jury that Petitioner had the right to defend himself since the victim was intoxicated. Id. at 187 ll. 17-22. Petitioner further testified that his trial counsel should have objected to the improper charges of voluntary and involuntary manslaughter. Id. at 188 ll. 2-25. With respect to his sentence, Petitioner testified that his trial counsel did not explain the life without parole ("LWOP") statute to him properly, and that if Petitioner understood the statute, he would have considered the six-year plea bargain offered by the State. Id. at 189 ll. 4-19. Petitioner also testified that while he did attend a motion hearing on LWOP, he was not aware the hearing was about LWOP until after he arrived, and that his trial counsel's objection to the LWOP notice was improper. Id. at 189 ll. 4-15; 190 ll. 1-16.

Mr. Matthews testified that he conducted an investigation of the case and hired a private investigator. Id. at 201 ll.10-12. Mr. Matthews testified that he discussed the discovery, the charge of murder, the possible sentences, and the possibility and consequences of taking a plea versus going to trial with Petitioner. Id. at ll.19-24; 202 ll. 1-14. Mr. Matthews testified that he had documents evidencing Petitioner's rejection of the plea and understanding that he would get life without parole if convicted of murder or voluntary manslaughter. Id. at 203 ll.8-14; 204 ll. 9-14. Mr. Matthews

3

testified he was confident Petitioner understood the LWOP statute. Id. at 204 ll. 3-7. Mr. Matthews also testified that the victim was intoxicated and perhaps on drugs at the time of his death, and that he examined Dr. Sexton on the victim's toxicology report at trial. Entry 11-9, 3. Mr. Matthews testified he did not know why the trial judge did not include a no duty to retreat statement in the jury charge, and stated that although the law surrounding the duty to retreat has changed since Petitioner's trial, he felt the charge given at Petitioner's trial was correct under the law at the time of the trial. Id. at 3-4.

Following the testimony of Petitioner and Mr. Matthews, the Honorable William Keesley ("PCR judge") determined that Petitioner's testimony was not credible and Mr. Matthews' testimony was credible. Id. at 5. The PCR judge determined that Mr. Matthews properly advised Petitioner of the LWOP statute, Petitioner understood the LWOP statute, and Petitioner was given proper notice that the State planned to request a sentence under the LWOP statute. Id. The PCR judge's decision was based on the fact that "the trial court held a motions hearing on the issue of LWOP, at which the solicitor verbally and in writing informed the court, Applicant, and Applicant's counsel that the state was seeking life without parole." Id. The PCR judge placed significant weight on Mr. Matthews' testimony that Mr. Matthews believed Petitioner understood the LWOP statute and that he objected to the LWOP notice to no avail. Id.

The PCR judge also determined that Mr. Matthews properly advised Petitioner of the nature and elements of the charges against him, including the lesser-included offenses. Id. The PCR judge's determination was based on Mr. Matthews' testimony that he hired an investigator, reviewed discovery, entered into plea negotiations, and discussed with Petitioner the elements of the charges pending against him as well as the elements of voluntary manslaughter, involuntary manslaughter,

and self-defense. Id. The PCR judge determined that the trial judge properly instructed the jury on voluntary manslaughter, involuntary manslaughter, murder, and self-defense based on the law at the time of the trial, and that "Mr. Matthews was in no way ineffective for not objecting to the charges presented to the jury." Id. at 6. The PCR judge noted that "no prejudice has been proven related to the jury charge and no showing of how the issue of retreat would likely have come out." Id. After making these determinations, the PCR judge denied Petitioner's application for post-conviction relief and dismissed the case with prejudice. Id. The PCR judge's order was entered on April 10, 2007. Entry 11-10.

Petitioner timely filed a notice of appeal to the PCR court's order on May 10, 2007. Entry 11-10. Petitioner filed a petition for writ of certiorari with the South Carolina Supreme Court on May 20, 2007. Entry 11-11. On appeal, Petitioner was represented by attorney Eleanor Duffy Cleary of the South Carolina Commission on Indigent Defense. Id. The sole issue raised in Petitioner's petition for writ of certiorari was "[w]hether the post-conviction relief court erred in finding counsel was not ineffective where counsel failed to object to the trial judge's self-defense charge, which omitted the statement that a defendant had no duty to retreat in his own home, where the evidence showed that petitioner was attached by the decedent on his own premises." Id. at 3. The State of South Carolina filed a response to the petition for writ of certiorari on May 20, 2008. Entry 11-12. The Supreme Court of South Carolina denied the petition for writ of certiorari on November 6, 2008. Entry 11-13. The Court issued a remittitur on November 24, 2008. Entry 11-14.

Petitioner filed a petition under 28 U.S.C. § 2254 for writ of habeas corpus on February 25, 2009. Entry 1. The petition sets forth one ground for relief: "[w]hether the judge erred by instructing the jury, over petitioner's objection, on voluntary manslaughter where pet.'s (sic)

5

testimony showed he was acting in self defense, and there was no evidence petitioner killed the decedent in a heat of passion upon a sufficient legal provocation." Id. at 5. Petitioner alleges the following facts support his claim for relief:

> During Judge's jury charge the judge noted that solicitor asked him to charge voluntary manslaughter as a lesser-included offense. The judge noted also that the defense objected to voluntary manslaughter being charged to the jury. The solicitor argued the testimony of witnesses supports the premise that the attack was "an unprovoked attack . . ." Defense counsel argued the solicitor's rendition did not support a voluntary manslaughter charge. Defense states the element[s] of voluntary manslaughter were not present in this case. The judge charged voluntary manslaughter nonetheless. Defense counsel again objected after conviction and argued that voluntary manslaughter should not have been charged.

Id. Respondent filed a motion for summary judgment on May 6, 2009. Entry 11. Petitioner filed a response in opposition to Respondent's motion for summary judgment on July 2, 2009. Entry 18. Respondent filed a reply to Petitioner's response on July 13, 2009. Entry 21. Petitioner filed a second response in opposition to Respondent's motion for summary judgment on July 21, 2009. Entry 22. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge William Catoe for pretrial handling. The Magistrate Judge reviewed the petition pursuant to the provisions of 28 U.S.C. §§ 1915, 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, and applicable precedents. The Magistrate Judge filed a Report and Recommendation on October 6, 2009, recommending that Respondent's motion for summary judgment be granted. Entry 25.

On October 20, 2009, Petitioner filed an objection to the Magistrate Judge's recommendation. Entry 28. On December 30, 2009, Petitioner filed a motion to amend his § 2254 petition. Entry 32. On that same date, Petitioner filed a supplemental pleading pursuant to Rule 15

6

of the Federal Rules of Civil Procedure.[3] Entry 32-1. Petitioner filed an amendment to his objection to the Magistrate Judge's recommendation on January 15, 2010. Entry 35. Respondent filed a response in opposition to Petitioner's motion to amend on January 19, 2010. Entry 37. Thereafter, Petitioner filed a reply to Respondent's opposition to the motion to amend on February 18, 2010. Entry 42.

II.    **DISCUSSION**

Before the court are (A) Petitioner's motion to amend his § 2254 petition; (B) Petitioner's supplemental pleading; and (C) Respondent's motion for summary judgment. For the reasons set forth below, the court **denies** Petitioner's motion to amend, **declines** to consider Petitioner's supplemental pleading, and **grants** Respondent's motion for summary judgment.

   A.    **Petitioner's Motion to Amend**

In his motion to amend, Petitioner asks the court to allow him "as a matter of fundamental fairness, to add ground two to clarify ground one and to elaborate on ground one to demonstrate how the court's error in charging the jury on voluntary manslaughter, <u>coupled</u> with his trial counsel's failure to challenge and object to the incompleteness of the court's charge on self-defense, hopelessly confused the jury and made a fair verdict impossible." Entry 32, 1 (emphasis in original). Petitioner adds that "[t]his proposed issue of the ineffectiveness of his trial counsel was raised in the court below, and is, thus properly preserved." <u>Id.</u> at 2.

Under 28 U.S.C. § 2244(d)(1), "[a] 1-year period of limitation shall apply to an application

---

[3]    In a letter to the court dated January 26, 2010, Petitioner states that his motion to amend and supplemental pleading were incorrectly docketed together as one entry and that "[t]hey are <u>distinct</u>, <u>freestanding</u> documents, and must be so identified." Entry 39, 2 (emphasis in original). The court addresses the motion to amend and supplemental pleading separately in its analysis below.

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." See Muhammad v. Kelly, 575 F.3d 359, 374 (4th Cir. 2009). The one-year limitation period began to run in this case on September 24, 2004, the date upon which the South Carolina Court of Appeals issued a remittitur, following the court's dismissal of Plaintiff's direct appeal. On September 14, 2004, Petitioner filed his PCR application. On November 24, 2008, the Supreme Court of South Carolina issued a remittitur, following the court's denial of Petitioner's PCR application. Under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under" § 2244(d)(1). Thus, the one-year limitation period in this case was tolled from September 24, 2004 until November 24, 2008, the period during which Petitioner's PCR application was pending. Petitioner filed his § 2254 petition on February 25, 2009, less than one year after November 24, 2008. Therefore, Petitioner's § 2244 petition was timely filed.

However, Petitioner's motion to amend his § 2254 petition was filed on December 30, 2009, more than one year after the Supreme Court of South Carolina denied Petitioner's petition for writ of certiorari. A § 2254 petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under Rule 15(c)(2) of the Federal Rules of Civil Procedure, an amended pleading relates back to the date of an original pleading if the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Mayle v. Felix, 545 U.S. 644, 656, 125 S. Ct. 2562, 2570 (2005) (interpreting Rule 15(c)(2) narrowly and finding that an amended habeas petition did not relate back to the original petition's filing date because the amended habeas petition asserted a new ground for relief supported by facts that differed in time and type to those set forth in the

original petition).[4]

In the present case, Petitioner's original petition was timely filed and sets forth one ground for relief challenging whether the state court judge erred by including a voluntary manslaughter charge in the jury instructions. Petitioner's motion to amend seeks to "add ground two to clarify ground one and to elaborate on ground one to demonstrate how the court's error in charging the jury on voluntary manslaughter, coupled with his trial counsel's failure to challenge and object to the incompleteness of the court's charge on self-defense, hopelessly confused the jury and made a fair verdict impossible." The court interprets Petitioner's motion as a request to add an ineffective assistance of counsel claim to his original petition. Under Mayle, the court must determine whether the proposed ineffective assistance of counsel claim shares a "common core of operative facts" with Petitioner's challenge to the voluntary manslaughter jury charge. See Mayle, 545 U.S. at 647, 125 S. Ct. at 2565. Because the facts supporting the proposed ineffective assistance of counsel claim

---

[4]     In Mayle, the petitioner timely filed a petition for writ of habeas corpus in federal court challenging the admission of videotaped prosecution witness testimony under the Sixth Amendment's confrontation clause. 545 U.S. at 644, 125 S. Ct. at 2563. After the one-year statute of limitations expired, the petitioner sought to amend his petition to challenge the admission of his pretrial statements at trial under the Fifth Amendment's right against self-incrimination. Id. The Supreme Court determined that the Fifth Amendment claim in the amended petition was of a different type than the Sixth Amendment claim in the original petition, and that both violations were alleged to have occurred at separate times. Id. at 645-46, 2564. Based on that determination, the Court held that the amended petition did not relate back to the date on which the original petition was filed, and therefore was not timely filed. Id. In so holding, the Court rejected the Ninth Circuit's broad view that an amended petition may relate back to the original petition's filing date "so long as a new claim stems from the habeas petitioner's trial, conviction, or sentence." Id. at 644 n.7, 2563 n.7. The Court adopted a narrow interpretation of Rule 15(c)(2) in habeas cases, and stated that "relation back will be in order so long as the original and amended petitions state claims that are tied to common core of operative facts." Id. at 647, 2565.

are different in time and type to the facts supporting Petitioner's original claim regarding the voluntary manslaughter charge, the court finds the proposed ineffective assistance of counsel claim is a separate and distinct claim that does not share a common core of operative facts with Petitioner's original claim regarding the voluntary manslaughter charge. Accordingly, the proposed ineffective assistance of counsel claim does not relate back to the original petition's filing date, and is therefore time barred.[5] See Gonzalez v. United States, 2009 WL 1351110 at *3 n. 5 (N.D. W. Va. 2009) (relying on Mayle in finding that the petitioner's proposed claims regarding the effectiveness of trial counsel related back to the original petition's filing date because the proposed claims shared a common core of operative facts with the claim in the original petition, which also alleged facts relating to the effectiveness of trial counsel); also see McKettrick v. Yates, 627 F. Supp. 2d 1144, 1152-53 (C.D. Cal. 2008) (relying on Mayle in finding that a habeas petitioner's amended petition, filed after the one-year statutory period, which raised an ineffective assistance of counsel claim, did not relate back to the original petition's filing date because the ineffective assistance of counsel claim did not arise out of the same "conduct, transaction, or occurrence" as set forth in the original pleading, which did not allege that petitioner's trial counsel was ineffective). Petitioner's motion to amend is denied.

**B.      Petitioner's Supplemental Pleading**

Petitioner filed a supplemental pleading and an amendment to his supplemental pleading pursuant to Rule 15 of the Federal Rules of Civil Procedure. Under Rule 15(d), "on motion and

---

[5]     Petitioner's statement in his second reply to Respondent's motion for summary judgment--that "[f]or the Respondent to somehow interpret . . . [ground one] as ineffective assistance of counsel is farfetched and specious"--supports this conclusion. Entry 22, 2.

reasonable notice, the court may permit a party to serve a supplemental pleading setting out any transaction, occurrence or event that happened after the date of the pleading to be supplemented."[6] In his supplemental pleading, Petitioner states that he "invokes the benefit of the ruling in State v. Belcher," where the Supreme Court of South Carolina held that "a jury charge instructing that malice be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse, or justify the homicide." 685 S.E.2d 802, 804 (S.C. 2009). Petitioner relies on Belcher to argue that in his case,

> the trial court left the jury with the impression that Voluntary Manslaughter could be found by the presence of malice, inferred by the use of a deadly weapon. This is because the trial court never gave an instruction stating that Voluntary Manslaughter did not require a finding of malice, but left the inference of malice from the use of a deadly weapon charge, given to define murder, hanging in the air, implying that this charge also applied to Voluntary Manslaughter, with the added elements of "Heat of Passion and sufficient legal Provocation."
>
> . . .
>
> It is telling that the trial court did inform the jury that Involuntary Manslaughter would occur without malice . . . . And by coupling murder and manslaughter . . ., the court left the jury with the impression that Murder and Voluntary Manslaughter could be proven by malice inferred by the use of a deadly weapon, thus fatally prejudicing the petitioner.

Entry 32-1, 2-3.

---

[6] The court notes that Rule 15(d) requires a party to seek leave of court to file a supplemental pleading. Although Petitioner cites Rule 15(d) in his supplemental pleading and concedes that leave of court is required, he nonetheless supplemented his petition without seeking permission of the court. Generally, *pro se* pleadings are held to a less stringent standard than those pleadings drafted by an attorney. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). The court applies Rule 15 liberally in this case, and will therefore address Petitioner's supplemental pleading despite the fact that Petitioner did not file a proper motion with the court.

11

The court declines to consider Petitioner's supplemental pleading because it raises a freestanding claim that is both independent of and inconsistent with the claim alleged in ground one of Petitioner's § 2254 petition. In ground one, Petitioner challenges whether the trial judge erred by instructing the jury on voluntary manslaughter. In his supplemental pleading, however, Petitioner challenges whether the voluntary manslaughter instruction should have included a statement that malice may not be inferred by the use of a deadly weapon. Additionally, as Respondent correctly points out, Petitioner's reliance on Belcher is misplaced, for the Supreme Court of South Carolina stated in that opinion that "today's ruling is effective in this case and for all cases which are pending on direct review or not yet final where the issue is preserved" and "will not apply to convictions challenged on post-conviction relief." Belcher, 685 S.E.2d at 810. The construction of when a change in state law should become effective is purely a state law issue under Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

C. **Respondent's Motion for Summary Judgment**

In his motion for summary judgment, Respondent argues that Petitioner's § 2254 petition should be dismissed because the petition fails to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 2254(a), and because the claim set forth in ground one of the petition lacks merit.[7] The Magistrate Judge agreed with Respondent's position and recommended that this court

---

[7] In response to Respondent's arguments, Petitioner argues that summary judgment is inappropriate. Petitioner's response in opposition to the motion for summary judgment does not directly address the arguments raised by Respondent regarding his claim as set forth in ground one of his petition; instead, Petitioner argues his trial counsel was ineffective for not objecting to the jury instruction on self-defense, which did not include an instruction that there was no duty to retreat. In Respondent's reply to Petitioner's response in opposition to the motion for summary judgment, Respondent argues that Petitioner's ineffective assistance of counsel claim is not properly before the court, and asks that if the court elects to

grant Respondent's motion for summary judgment. In the Magistrate Judge's view, Petitioner's claim alleges an error of state law that may not serve as the basis upon which federal habeas corpus relief can be granted absent a showing of a denial of due process. The Magistrate Judge determined that even if Petitioner's claim was appropriate for review by this court, the claim would fail on the merits because there was sufficient evidence presented at trial to support a voluntary manslaughter charge. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The adjudication of Petitioner's § 2254 petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254. Under the AEDPA, a petitioner is entitled to habeas corpus relief if the petitioner is in state "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A § 2254 petition filed by a petitioner in state custody "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

---

treat Petitioner's response in opposition as a motion to amend, that Respondent be given an opportunity to respond. Because the court already denied Petitioner's subsequently filed motion to amend, Respondent's request is a moot issue.

13

presented in the State court proceeding." 28 U.S.C. § 2254(d). With regard to § 2254(d)(2), the factual findings of the state court judge are to be given great deference and presumed to be correct unless the petitioner shows otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In his objection to the Magistrate Judge's recommendation, Petitioner raises a number of arguments alleging that the jury instruction on self-defense was not proper and that his trial counsel was ineffective in failing to object to the improper instruction. For example, in Petitioner's amendment to his objection to the Magistrate Judge's recommendation, he states that

> the Magistrate Judge's report and recommendation only addresses his "Voluntary manslaughter" jury instruction and whether the proper elements of Voluntary manslaughter were represented by the evidence adduced at trial. However, the report does not address the other, equally important issue inherent in ground one of his Habeas Petition, the "Self-Defense" issue. Although the trial court offered an instruction on self-defense, it was an incomplete instruction, thus making it prejudicial Per Se because the jury had no complete foundation upon which to rest a verdict of Self-Defense and, hence, an acquittal of the petitioner.

Entry 35, 2. As stated above, Petitioner asserts only one ground in his § 2254 petition, challenging whether the trial judge erred in instructing the jury on voluntary manslaughter, where there was evidence of self-defense and no evidence that petitioner acted in the heat of passion and upon a sufficient legal provocation. There is no support in Petitioner's § 2254 petition for his characterization of ground one as alleging that the self-defense instruction was incomplete. Petitioner makes no reference to the self-defense instruction in ground one of his § 2254 petition; instead, he states that his testimony showed he acted in self-defense. Moreover, as already discussed at length above, Petitioner does not allege in his § 2254 petition that his trial counsel was ineffective, and his motion to amend his petition to add such a claim is denied, as it is time-barred. Accordingly, the court will only consider the Petitioner's objections that pertain to ground one of his § 2254

petition.

The Magistrate Judge determined that Petitioner did not present a claim for relief in his § 2254 petition because Petitioner's claim, which challenges whether the voluntary manslaughter charge was properly given, is a claim of error of state law that cannot serve as the basis for federal habeas relief unless the error resulted in a denial of due process. In his objection, Petitioner argues that he has presented a claim for relief because ground one of his § 2254 petition, which challenges the voluntary manslaughter jury instruction, is based on his belief that the state court judgment "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." Entry 28. The court finds that the Magistrate Judge correctly determined that Petitioner's claim is a claim of error of state law that may not serve as the basis for federal habeas relief and that Petitioner has failed to demonstrate the error resulted in a denial of due process. See Estelle v. McGuire, 502 U.S. 62, 72-73 (1991); also see Marshall v. Lonberger, 459 U.S. 422, 438 n. 6, 103 S. Ct. 843, 853 n. 6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules").

The Magistrate Judge also determined that even if federal habeas review were appropriate, Petitioner's § 2254 petition should be dismissed on the ground that it lacks merit because there was sufficient evidence presented at trial to support a voluntary manslaughter jury charge. The court agrees. At trial, Petitioner's roommate James Andrews testified that on the night of the victim's death, he was in his room with the door closed, watching television and rolling money. Entry 11-1, 144 ll. 14-21; 145 ll. 7-12. Andrews testified that he heard Petitioner and the victim arguing while he was in his room. Id. at 145 ll. 25; 146 ll. 1. Andrews testified he heard Petitioner tell the victim "to get out of his room," and that the victim stated "don't come in my room no more either" before

he exited Petitioner's room. Id. at 146 ll. 2-9. Andrews further testified that the victim later "came back in that area" near the kitchen or dining room but he wasn't sure if the victim "went back in his room or not." Id. at ll.10-14. Andrews testified he "heard a lot of slapping" that lasted about five or ten minutes. Id. at ll. 21-25; 147 ll.15-18. Andrews testified that it got "sort of" quiet before he heard Petitioner say "you're going to make me go to prison for fucking you up." Id. at 147 ll. 19-25; 148 ll. 1-4.

Johnny Roberson, a friend of the victim and roommate of witness Bruce Battle, testified that on the night of the victim's murder he witnessed Petitioner enter the victim's room. Id. 161 ll. 10-17. Roberson testified that Petitioner was "real mad" when Petitioner entered the victim's room and that Petitioner took the victim's crack stem, used it to smoke crack, and then threw the crack stem on a table before exiting the victim's room. Id. at 11. 16-15; 162 ll. 1-5. Roberson testified that the victim then "got up from the table and started down the hallway out of his room"towards Petitioner, who was sitting at the dining room table. Id. at 162 ll. 13-23. Roberson testified that the victim asked Petitioner "why are you humiliating me like this" and then "slapped him, not hard, two or three times in the face" causing Petitioner's crack stem to fall out of his mouth. Id. at ll. 24-25; 163 ll 1-3. Roberson testified that Petitioner then "got up and turned and went out of the room." Id. at 163 ll. 23-24. Roberson testified that the victim remained standing next to the kitchen table near the hallway, and that Roberson stated that he was leaving because he did not want to watch Petitioner and the victim kill each other. Id. at 164 ll. 4-19. When asked if he knew what Petitioner stored in the dresser of his room, Roberson testified that Petitioner kept a box of knives stored in his dresser and that Petitioner was employed as a meat cutter. Id. at 165 ll. 1-11.

Petitioner's friend, Bruce Battle, testified that when he arrived at the scene, Petitioner opened

the door to the house and told Bruce that "he had fucked his roommate up" because "his roommate had knocked the dope out of his hand" and that "they got to fighting." Id. at 115 ll. 2-17. Battle testified that he and Petitioner began looking for the drugs on the floor but that he "didn't see nothing," Id. at 117 ll. 1-5 . When asked if Petitioner had any injuries, Battle testified that "there wasn't none" and he "didn't see nothing." Id. at 117 ll. 6-8.

Petitioner also testified at his trial. During his testimony, he stated that he did not do any drugs on the day of the victim's death but that he did have beer while he was sitting on the porch of his house with the victim and a couple of other men. Id. at 233 ll. 3-25. Petitioner testified that the victim "kept, you know, going on about borrowing money from myself and, you know, it just turned into an argument to where I was letting him know I wasn't going to get involved with the money." Id. at 233 l. 25; 234 ll. 1-4. Petitioner testified that at some point he left the porch, entered the house, and prepared to cut some fish by getting a knife from his room and placing it on the sink where he normally prepares his food. Id. at 234 ll 5-25; 235 ll. 1-18. Petitioner testified that the victim came out of his room and asked to borrow money from Petitioner. Id. at 236 ll. 2-7. When asked how the victim was acting, Petitioner testified that the victim "was really acting like he was violent, real violent" like he was on crack cocaine. Id. at 236 ll. 8-11. Petitioner testified that he told the victim to leave his room, that he didn't have any money, and that he was not going to let the victim borrow any money even if he had some. Id. at 236 ll. 19-24. Petitioner then testified that the victim had "jumped" on him and stole money from him in the past, and that the victim was "an ex-military guy" who "was real strong," especially when he was on drugs. Id. at 237 ll. 1-10.

Thereafter, Petitioner testified that the victim went to his own room, but then later snuck up on Petitioner as he was closing the door to his room and "swung twice," hitting him in the lips and

then "swung another time and knocked [him] down." Id. at ll. 14-21; 239 ll. 1-7. Petitioner testified that he was in the dining room near the kitchen sink when he got knocked down. Id. at 239 ll. 8-18. Petitioner testified that he was "dazed" after being knocked down and that the victim began to choke him hard from behind. Id. ll. 19-15. Petitioner then testified that he got up, began to struggle with the victim, and then grabbed the knife from the kitchen sink while the victim was still choking him. Id. at 240 ll. 1-13. When asked what he did as the victim was choking him from behind, Petitioner said that he "came around and turned and hit him" and "didn't even think he hit him that hard." Id. ll. 2-5. Petitioner then testified that after the victim "sort of like turned [him] loose a little bit and he started back," Petitioner "swung again" before the victim walked down the hall. Id. at ll. 8-18. Petitioner testified that he went to see if the victim was okay and then told one of his roommates to call the police and the landlord. Id. ll. 19-21; 238 ll. 9-11. Petitioner testified that "all [he] was doing was defending" himself and he thought the victim "was basically going to choke [him] to death." Id. at 237 ll. 22-24.

Under South Carolina law, voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." State v. Cole, 525 S.E.2d 511, 513 (S.C. 2000). The testimony of James Andrews, Bruce Battle, Johnny Roberson, and Petitioner supported a voluntary manslaughter charge. The testimony indicating that the victim hit Petitioner several times supports a finding that there was sufficient provocation. The testimony indicating that Petitioner was angered by the victim's actions provide sufficient evidence that Petitioner may have acted in a sudden heat of passion. Because there was evidence presented at trial supporting a voluntary manslaughter charge, the court finds that ground one of Petitioner's § 2244 petition lacks merit.

## III. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases, as effective December 1, 2009, provides that the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir.2001). The court concludes that Petitioner has not made the requisite showing. Accordingly, the court **denies** a certificate of appealability

## IV. CONCLUSION

The court hereby **denies** Petitioner's motion to amend his § 2254 petition (**Entry 32**), **declines to consider** Petitioner's supplemental pleading (**Entry 32-1**), and **grants** Respondent's Motion for Summary Judgment (**Entry 10**). Accordingly, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Entry1) is hereby dismissed with prejudice. The court **adopts** the Magistrate Judge's Report and Recommendation (**Entry 25**) and incorporates it herein by reference.

IT IS ORDERED.

s/Margaret B. Seymour
United States District Judge

March 23, 2010
Columbia, South Carolina